UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KAREN LYNNE C.[1], | : | Case No. 3:20-cv-228 |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Karen Lynne C. brings this case challenging the Social Security Administration's partial denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), and the administrative record (Doc. #9).

**I.  Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income benefits on October 13, 2016, alleging disability due to several impairments, including cervical spine laminectomy C-3 through C-7 in 2009, ulna nerve and carpal tunnel surgery in December 2009, lower back surgery in 2013, neurogenic bladder post-operative from back surgeries, and Fuchs' dystrophy from 2016 eye exam. (Doc. #9, *PageID* #235). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Stuart Adkins. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since September 29, 2016, her alleged onset date. |
| Step 2: | Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease, carpal tunnel syndrome, headaches, and obesity. |
| Step 3: | Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Prior to December 7, 2018, the date Plaintiff became disabled, her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … with the following exceptions: [Plaintiff] must be permitted to alternate between sitting and standing every 20 minutes while at the workstation. No more than frequent handling, fingering, and feeling with the left upper extremity. No more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps |

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

and stairs. No work at unprotected heights or around dangerous machinery, or climbing of ladders, ropes, or scaffolds."

Beginning on December 7, 2018, Plaintiff has the residual functional capacity to perform "light work … with the same exceptions as noted above, and the additional exception that [Plaintiff] is expected to be off task 15% of the workday."

Prior to December 7, 2018, Plaintiff was capable of performing her past relevant work as a Service Order Dispatcher.

Beginning on December 7, 2018, Plaintiff's residual functional capacity has prevented her from being able to perform past relevant work.

Step 5: Prior to December 7, 2018, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was capable of performing other work that exists in significant numbers in the national economy.

Since December 7, 2018, considering Plaintiff's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. # 9, *PageID* #s 45-57). Based on these findings, the ALJ concluded that Plaintiff was not disabled prior to December 7, 2018, but became disabled on that date and has continued to be disabled. *Id.* at 57.

The evidence of record is adequately summarized in the ALJ's decision (Doc. # 9, *PageID* #s 42-57), Plaintiff's Statement of Errors (Doc. #10), and the Commissioner's Memorandum in Opposition (Doc. #13). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r*

*of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

Plaintiff asserts that the ALJ erred at Step Two by failing to find a severe mental impairment or severe knee impairment and by failing to incorporate any corresponding limitations in his RFC assessment. Further, she argues that the ALJ failed to appropriately evaluate the opinion of Sue Carter, CNP. Finally, Plaintiff contends that the ALJ erred in finding that she could perform her past relevant work. The Commissioner maintains that substantial evidence supports the ALJ's decision.

A.      **Step Two**

Plaintiff argues that the ALJ erred by failing to find any mental health disorder as a severe impairment. Plaintiff notes that consultative examiner George O. Schulz, Ph.D., diagnosed an anxiety disorder and depressive disorder, and Sue A. Carter, CNP, treated Plaintiff for depression and prescribed medication, including Lexapro. (Doc. #10, *PageID* #1070).

At Step Two of the five-step sequential evaluation process, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimaint's] physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a); SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs." *Id.* at § 404.1522(b).

The Sixth Circuit has construed Step Two as a "*de minimis* hurdle." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted).

In the present case, the ALJ found at Step Two that Plaintiff had several severe impairments: cervical and lumbar degenerative disc disease, carpal tunnel syndrome, headaches, and obesity. (Doc. #9, *PageID* #45). The ALJ also found that Plaintiff had non-severe impairments: neurogenic bladder, Fuch's dystrophy, hypertension, anxiety, and depression. *Id*.

In the ALJ's discussion of Plaintiff's mental impairments, she recognized that the consultative examiner, George O. Schulz, Ph.D., diagnosed anxiety and depression. *Id.* at 46. The

ALJ then reviewed each of the "paragraph B" categories, concluding that Plaintiff had mild limitations in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. *Id.* at 46-47.

An ALJ does not generally commit reversible error by finding that an impairment is non-severe under two conditions: 1) the ALJ also found that the claimant has at least one severe impairment; and 2) the ALJ considered both the severe and non-severe impairments at the remaining Steps in the sequential evaluation. *See Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007) ("when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz* 837 F.2d at 244); *Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) ("once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining [S]teps.") (citation omitted)).

As noted above, the ALJ meets the first condition; he found at Step Two that Plaintiff had several severe impairments. (Doc. #9, *PageID* #45). Thus, the question is whether the ALJ considered all of Plaintiff's impairments at the remaining steps. *See Pompa*, 73 F. App'x at 803 ("Because the ALJ found that [the claimant] had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

A review of the ALJ's decision reveals that he considered Plaintiff's mental impairments when assessing her residual functional capacity. (Doc. #9, *PageID* #s 52-53). The ALJ weighed all of the opinions related to Plaintiff's mental impairments and reasonably found that Plaintiff's mental impairments did not cause any functional limitations. Specifically, the ALJ adopted the opinions of record-reviewing psychological consultants, Vicki Warren, Ph.D., and Robyn Murry-Hoffman, Ph.D. *Id.* at 53. Dr. Warren and Dr. Murry-Hoffman found that Plaintiff had two non-severe impairments—depressive, bipolar, and related disorder and anxiety and obsessive-compulsive disorder. *Id.* at 95, 110. They opined that Plaintiff's mental impairments would not causes any significant limitations. *Id.* at 95-96, 110-11. The ALJ found that Dr. Warren and Dr. Murry-Hoffman's opinions were "consistent with [the ALJ's] review of the balance of the record, which does not indicate a need for or history of any significant mental health treatment." *Id.* at 53.

The ALJ assigned "great weight" to the opinion of consultative examiner George O. Schulz, Ph.D. Dr. Schulz examined Plaintiff in January 2017. *Id.* at 515. He diagnosed unspecified anxiety disorder and unspecified depressive disorder. *Id.* at 520. Dr. Schulz opined that Plaintiff "is expected to be able to understand and apply instructions in the work setting within the low average range of intellectual functioning." *Id.* at 521. She is able respond appropriately to coworkers and supervisors in a work setting. *Id.* at 522. Further, "she is mentally capable of completing routine or repetitive ADL tasks both at home and in the community or on a job setting." *Id.* She is also "expected to mentally respond appropriately to work pressure." *Id.*

The ALJ gave several reasons for assigning Dr. Schulz's opinion "great weight." He noted that Dr. Schulz interviewed Plaintiff, administered mental status testing, reviewed records, and

7

based his opinion on his experience. *Id.* Further, Dr. Schulz's opinions were consistent with the testimonial record, CNP Carter's opinions, and the lack of mental health treatment (beyond taking prescribed medications). *Id.*

The ALJ also relied, in part, on the opinion of Plaintiff's treating CNP, Sue Carter. *Id.* at 52. The ALJ assigned partial weight to CNP Carter's analysis of Plaintiff's mental abilities, noting that it was substantially consistent with the record, including Dr. Schulz's opinion. *Id.* Plaintiff points out that Ms. Carter opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Id.* at 906. However, the ALJ discussed these findings in detail at Step Two. *Id.* at 46-47. Moreover, Ms. Carter did not provide functional limitations associated with those findings.

Plaintiff also argues that the ALJ erred at Step Two by failing to find any kind of knee impairment. Plaintiff relies on a treatment note from Ian M. Thompson, M.D., M.S., who indicated in May 2018 that she was experiencing chronic pain and "disability due to knee pain." (Doc. #10, *PageID* #1070) (citing Doc. #9, *PageID* #788). Additionally, Plaintiff reported to a physical therapist that she can walk without significant pain for fifteen to twenty minutes; has to lead with unaffected extremity when ascending stairs; and is unable to perform household chores in a reasonable time frame due to knee pain. *Id.* (citing Doc. #9, *PageID* #796).

Although Plaintiff points to limitations she reported to her physical therapist, the ALJ's RFC assessment accounts for the limitations. Specifically, the ALJ limited Plaintiff to light work

8

with the ability to alternate between sitting and standing every twenty minutes and no more than occasional climbing of stairs. Plaintiff does not identify any additional limitations caused by her knee pain that were not accounted for by the ALJ. Notably, Plaintiff does not identify a specific knee impairment. Moreover, x-rays of Plaintiff's knees revealed no acute abnormality. (Doc. #9, *PageID* #799). An MRI of Plaintiff's right knee also showed no acute findings. *Id.* at 801. Furthermore, while the ALJ does not specifically address Plaintiff's knee pain, the ALJ accurately observed that she had normal gait and range of motion at numerous exams. *Id.* at 48.

Accordingly, no reversible error occurred at Step Two, and Plaintiff's assertions to the contrary are unpersuasive.

### B. Evaluation of Treating CNP Sue Carter

Plaintiff asserts that the ALJ erred in evaluating the opinions of treating CNP Sue Carter. (Doc. #10, *PageID* #s 1071-72).[3] Plaintiff argues that the ALJ erred in rejecting Ms. Carter's opinion because she testified that she uses a cane for stability approximately forty percent of the time and also has a walker; she does not drive because it is difficult to maneuver her neck after surgery; she can sit and stand for fifteen to twenty minutes; and she is able to lift a grocery bag or gallon of milk. (Doc. #10, *PageID* #s 1071-72). Further, Plaintiff points to treatment records showing edema, tenderness, swelling, pain, decreased strength in her right shoulder, weakness and swelling in her hands, pain in her legs when performing strength testing, neck stiffness, and decreased range of motion in the cervical and lumbar spines. *Id.* at 1072.

---

[3] Although Ms. Carter is a certified nurse practitioner (CNP) and advanced practice registered nurse (APRN), the ALJ mistakenly refers to her first as Sue A. Carter, DNP, and thereafter as Dr. Carter.

Ms. Carter completed a basic medical questionnaire and mental function capacity assessment in October 2017. (Doc. #9, *PageID* #s 904-07). She indicated that Plaintiff's medical conditions include fibromyalgia, cervical stenosis, herniated lumbar disc, and chronic migraines. *Id.* at 904. She opined that Plaintiff can sit/walk for fifteen minutes every hour and sit for twenty minutes without interruption. *Id.* at 905. She can lift/carry up to five pounds frequently and ten pounds occasionally. *Id.* Plaintiff's ability to bend and reach are extremely limited; her ability to push/pull is markedly limited; and her ability to see is moderately limited. *Id.*

Social Security Regulations require ALJs to consider opinions provided by all medical sources in addition to the other relevant record evidence. *See* 20 C.F.R. §§ 404.1513, 404.1527. The Regulations distinguish between "acceptable medical sources" – *e.g.*, physicians, psychologists, optometrists, podiatrists – and "other sources – *e.g.*, therapists, physician assistants, and nurse practitioners. *See* Soc. Sec. R. 06-03p 2006 WL 2329939 (Aug. 9, 2006); 20 C.F.R. § 404.1513.

As a certified nurse practitioner, Ms. Carter is not considered to be an "acceptable medical source;" rather, she is deemed one of the "other sources." *Id.* As an "other source," her opinions alone "cannot establish the existence of a medically determinable impairment ...." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Still, her information "may provide 'insight into the severity of the impairment(s) and how it affects the individual's ability to function.'" (*Id.* (quoting, in part, Soc. Sec. R. 06-03p, 2006 WL 2329939 at *3 (Aug. 9, 2006)).

Opinions from "other sources" should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other

evidence, the degree to which the source presents relevant evidence to support an opinion, and how well the source explains the opinion. Soc. Sec. R. 06-03p, 2006 WL 2329939 at *4-5; *see Cruse*, 502 F.3d at 541 (6th Cir. 2007). The ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Soc. Sec. R. 06-03p, 2006 WL 2329939 at *6.

In the present case, the ALJ assigned "partial weight" to Ms. Carter's opinions. (Doc. #9, *PageID* #52). The ALJ found that Ms. Carter's opinions related to Plaintiff's mental impairments were consistent with the record. However, the ALJ concluded that Ms. Carter's opinion regarding Plaintiff's ability to lift/carry was inconsistent with Plaintiff's testimony and "appears to underestimate [Plaintiff's] ability to perform postural movements and use her upper extremities." *Id*. The ALJ noted that Plaintiff's records show that she has a substantial range of motion, reflexes, and a normal gait. *Id.* at 52-53 (citations omitted). Furthermore, earlier in his decision, when explaining why he concluded that Plaintiff could perform a reduced range of light exertion work, the ALJ recognized Plaintiff's long history of treatment but "could not find significant recent invasive treatment recommendations, or any other evidence in the record, that would indicate the extreme level of lifting limitation recommended by [Ms.] Carter." *Id.* at 51.

Although Plaintiff is correct that review of the record reveals symptoms such as swelling, tenderness, and edema, the ALJ acknowledged these symptoms and reasonably accounted for them in assessing Plaintiff's residual functional capacity assessment. *See* Doc. #10, *PageID* #1072)

11

(citing Doc. #9, *PageID* #819); Doc. #9, *PageID* #50-51.  For instance, the ALJ included a sit/stand option in Plaintiff's residual functional capacity assessment to account for Ms. Carter's opinions that Plaintiff could only stand and sit for limited periods of time.  *Id.* at 48, 51.

Furthermore, in assessing Plaintiff's residual functional capacity, the ALJ reasonably relied on the opinions of William Bolz, M.D., and Gail Mutchler, M.D..  Dr. Bolz and Dr. Mutcher opined that Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally.  *Id.* at 97, 113.  She could stand and/or walk for six hours in an eight-hour workday and sit for six hours.  *Id.* at 98, 113.  Both indicated that Plaintiff had some postural limitations.  Although the ALJ incorporated their opined limitations, he added limitations to account for Plaintiff's carpal tunnel syndrome and Ms. Carter's opinion that Plaintiff would need to alternate between sitting and standing.

In sum, the ALJ appropriately considered the medical evidence at issue and properly weighed the opinion evidence, including the opinion of Ms. Carter, based upon reasons supported by substantial evidence.

### C.  Past Relevant Work

Plaintiff contends that the ALJ reversibly erred at Step Four in finding that she could perform her past relevant work as a service order dispatcher.  (Doc. #10, *PageID* #1073). According to Plaintiff, the ALJ's finding constitutes error because the vocational expert testified that she was not able to identify a matching job title in the DOT for Plaintiff's past work.  Plaintiff testified that the position consisted of very heavy labor; however, the vocational expert was only able to identify the position as "service order dispatcher," a sedentary, semi-skilled position.  *Id.*

12

At Step Four of the five-step sequential evaluation process, the claimant must prove "the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work..." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see* 20 C.F.R. § 404.1520. Past relevant work is work that a claimant has performed within the past fifteen years. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). If a claimant can perform past relevant work, then the claimant is not disabled. *Id.* At Step Five, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. *Jones*, 336 F.3d at 474 (citing *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).

In the present case, the ALJ found at Step Four that Plaintiff was capable of performing her past relevant work as a service order dispatcher as generally performed in the national economy (but not as performed by Plaintiff). (Doc. #9, *PageID* #54). Although the ALJ found that Plaintiff could perform her past relevant work, he nevertheless continued to Step Five, concluding that prior to December 7, 2018, considering Plaintiff's age, education, work experience, and residual functional capacity, she can perform other work that exists in significant numbers in the national economy. *Id.* at 55. Because the ALJ proceeded to Step Five, any error by the ALJ at Step Four would be harmless. *Id.* at 56.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #10) is **OVERRULED**;
2. The Commissioner's non-disability determination is **AFFIRMED**; and

      3.      The case is terminated on the docket of this Court.

March 31, 2022                                               *s/Peter B. Silvain, Jr.*
                                                                                         Peter B. Silvain, Jr.
                                                                                         United States Magistrate Judge